IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JAMES E. WALKER,** **#R02343,** <br><br> **Plaintiff,** <br><br> v. <br><br> **KIMBERLY BUTLER,** *et al.*, <br><br> **Defendants.** | Case No. 19-cv-00445-SPM |

# <u>MEMORANDUM AND ORDER</u>

**MCGLYNN, District Judge:**

Plaintiff James Walker, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Lawrence Correctional Center, commenced this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights while he was at Menard Correctional Center ("Menard"). Walker claims that during his time at Menard he was denied access to the courts, his grievances were continuously mishandled, and he was repeatedly retaliated against for complaining about staff conduct.

Now before the Court is a Motion for Leave to File an Amended Complaint filed by Walker. (Doc. 76). Walker states he would like to amend the complaint to add additional claims and fifteen new defendants, as well as replead claims against Defendants Smolak, Allsup, Wood/Payne, Spiller, Rowald, and John Does 2-9, who were previously dismissed from this case without prejudice. Defendants object to the motion and argue the request to amend should be denied because the proposed amended complaint does not comply with Local Rule 15.1, which requires all new material in the propose amended pleading to be underlined. The proposed amended complaint is three hundred pages long, including exhibits, and Defendants argue that given the length and the number of claims and Defendants, Plaintiff's failure to comply with Rule

15.1 makes it particularly difficult to understand the effect of the amended complaint. Walker filed a reply arguing that he has complied with Rule 15.1, but that the underline markings may be difficult to read due to the e-filing system. (Doc. 86).

Federal Rule of Civil Procedure 15(a) provides that leave to amend should be freely given when justice so requires. Walker's motion is timely and while the Court acknowledges that the proposed amended complaint does not underline all new material[1] as required by Local Rule 15.1, the Court will waive this requirement in this instance. Thus, Motion for Leave to File an Amended Complaint is granted, and the Clerk of the Court will be instructed to file the proposed amended complaint as the "Third Amended Complaint."

The Third Amended Complaint, however, is still subject to review under 28 U.S.C. § 1915A.[2] Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the pro se complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). The Court must also consider whether any claims are improperly joined and subject to severance or dismissal. *See George v. Smith,* 507 F.3d 605, 607 (7th Cir. 2007).

### THIRD AMENDED COMPLAINT

In the Third Amended Complaint, Walker reasserts that from 2013 through 2016, while housed at Menard, legal claims and cases were dismissed due to the conduct of various staff

---

[1] Although many of the allegations in the proposed amended complaint are substantially similar to what was alleged in the Second Amended Complaint, Walker has rewritten a majority of the statement of claim, thus, most of the language should be underlined.
[2] Pursuant to Section 1915A, any portion of the proposed amended complaint that is legally frivolous or malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

members, he was retaliated against for filing grievances, and his grievances were mishandled.

***Denial of Access to Courts***

In March 2013, Bramlet and Knust, who worked in the law library, did not provide Walker a clear copy of his habeas petition and exhibits while the facility was on lockdown. They also did not provide Walker with legal assistance and failed to inform him: (1) that his petition could be electronically filed; (2) that his petition required an affidavit stating he placed the petition in the prison mail system so that he could take advantage of the prison mailbox rule; and (3) on how to answer a show cause order demonstrating why his petition should not be dismissed as untimely. His habeas petition was ultimately dismissed in August 2014, but Walker did not discover the dismissal until November 2016, when he attempted to file an amended habeas petition. Walker was never notified by Bramlet or Knust or Warhasuen,[3] who worked in the mailroom, that his habeas petition had been dismissed, preventing him from filing a timely appeal.

In April 2013, Walker was temporarily transferred to Stateville Correctional Center. While he was gone, Warhasuen held his legal mail and did not deliver it to Walker until several weeks after his return to Menard in May. Because Warhasuen withheld his mail, Walker was unable to file a timely appeal or request a deadline extension in one of his cases. He was further hindered from filing a timely appeal in July 2013, when Warhasuen returned to Walker his legal mail without sending it. In August of 2013, Warhasuen, again returned another piece of legal mail, a civil complaint Walker was attempting to file with the Chancery Court of Cook County, unsent. The case was later dismissed because Walker did not have paper, pens, or envelopes to timely file a response.

In the fall of 2013, Walker had several court deadlines and was refused access to the law

---

[3] In the current operative complaint (Doc. 22) and the proposed amended complaint, Walker refers to this individual as John Doe 1. Since filing the motion to amend and the proposed amended complaint, John Doe 1 has been identified as Bradley Warhasuen.

library. Specifically, in August, Walker was forced to leave the library and return to the cellhouse to use the bathroom by Ellis. The case he was preparing for was ultimately continued until late November 2013, but he did not receive another call pass to visit the library from Bramlet or Knust. Walker requested a library call pass from Smolak, who took down Walker's information, but Smolak did not ensure Walker had timely access the library. Bramlet, Knust, and Smolak did not allow Walker to use the law library until the day of the deadline in November. As a result, a defendant was dismissed from one of his cases.

In January 2014, Bramlet and Knust again prevented Walker from responding to a motion to dismiss. At the time, the facility was on lockdown, and Bramlet and Knust did not provide Walker paper, pens, or an envelope to write and mail a response to the court. He also was not given legal materials and adequate access to the law library to properly research the motion and draft a response with supporting legal authority. As a result, the last defendant in his FOIA case was ultimately dismissed.

Around February 26, 2015, while in the law library, Walker informed Clendenin that he had a March 13, 2015 court deadline. He was scheduled for legal exchange at the end of February so that he could access legal documents in preparation for the deadline. On the date of his legal exchange, when he tried to leave the gallery, McCarthy received a radio call canceling Walker's call pass and preventing Walker for going to legal exchange. Walker made repeated requests to John Doe 3 and John Doe 4 requesting access to his legal boxes and to the personal property room so he could retrieve exhibits and his motion. Walker also requested access to his legal and personal property from Jones, Hank, Berry, and Best. Clendenin, who worked in the law library, stated that Walker did not have a March 13, 2015 deadline. Because of the constant denials, he missed the court deadline.

In January 2016, Clendenin and John Doe 7 denied Walker library access. Walker had a

court deadline of January 27, 2016. Ultimately, he was not scheduled for the law library until January 28, 2016, after the deadline. Because he was denied law library access for the month of January, he was unable to file an appeal, and a motion was denied.

In June of 2016, John Doe 5 repeatedly denied Walker's requests for legal exchange so that he could access his legal documents. Walker claims that the documents would have aided his attorney in filing a motion.

*Retaliation*

Walker further claims that he was continually retaliated against by staff at Menard for filing grievances and lawsuits against staff members.

On December 4, 2014, Walker was moved by Porter to North 2 cellhouse. He was held in a small shower room for hours. The shower was not functional, and he did not have access to a toilet. At around 10:45 a.m., he informed John Doe 2 that he needed to use the bathroom and was ignored. He was then taken to cell 353 around 1:00 p.m. by John Doe 2. His new cell in North 2 was significantly smaller than his previous cell and did not have a desk, stool, or shelf. The mattress and pillow both smelled of urine. Walker believes that he was assigned to smaller and unsanitary living conditions by Butler in retaliation for filing grievances and attempting to obtain a restraining order against Menard staff and writing grievances against Butler.

On February 25, 2015, Smith wrote Walker a disciplinary ticket for theft and disobeying a direct order. The additional charge of theft was falsely included in the ticket in retaliation for Walker disobeying a direct order. Walker was found not guilty for theft by Adjustment Committee Members Kent Brookman and James Willis but was found guilty of disobeying a direct order. He was punished with three months in segregation and three months C-grade demotion, which is a longer sentence received by other inmates for the same offense. Walker was housed in segregation from March 4, 2015 until May 22, 2015. After his release, he continued to have a C-grade status

and commissary restrictions for another three months.

In May 2015, Walker had a medical appointment with Nurse Jane Doe 1 for back pain, sinusitis, and gastrointestinal problems. John Doe 13 cuffed Walker's hands behind his back and escorted him to the sick call room. At the appointment, Walker was told to sign a co-pay voucher by Nurse Jane Doe 1. Walker informed Nurse Jane Doe 1 he was unable to sign because his hands were cuffed behind his back. Nurse Jane Doe 1 told Walker that she had seen other inmates do it, and Walker responded he was "not other inmates." Walker asked the officer in the room to uncuff at least one hand, and the officer refused. Walker told Nurse Jane Doe 1 that he should not have to sign a co-pay voucher because his issues were chronic. Nurse Jaen Doe 1 ignored Walker and signed his name on the co-pay voucher, took his temperature, and asked a few questions. She did not refer Walker to a doctor in retaliation for not signing the co-pay voucher.

In November 2015, Walker grieved that he was not supplied adequate soap. He asked Butler about his lack of soap when she was doing rounds with a visitor from the John Howard Association. However, he was not provided soap by Butler, and his grievances were not responded to by Wood because he confronted Butler in front of the visitor from the John Howard Association. Additionally, his grievances requesting soap were removed from the grievance box and not delivered to the counselor's office by John Doe 6.

In 2016, Clendenin denied Walker access to administrative rules and rules regarding privacy of attorney calls in retaliation for filing grievances.

Walker's grievances were also mishandled in retaliation for him complaining about staff conduct and conditions at Menard. Pierce, Allsup, Wood, Butler, Rowald, and Qualls all failed to respond to grievances or denied grievances. Spiller, who supervised Wood and Allsup, refused to prevent their retaliatory conduct. Warhasuen and John Does 8, 9, 10, 11, 12, 13, and 17 delayed Walker's mail so that the Administrative Review Board received his grievances after the deadline,

resulting in the denial of his grievances as untimely. Bramlet and Clendenin at times refused to copy is grievances or copied the grievances so that they were difficult to read preventing him from timely appealing institutional decisions to the Administrative Review Board. John Does 14, 15, and 16 withheld grievances from delivery to and from the law library for copying.

## DISCUSSION

Based on the allegations in the proposed amended complaint, the Court designates the following sixteen Counts:

**Count 1:** First Amendment access to courts claim against Bramlet, Knust, and Warhasuen for hindering Walker's ability to file a habeas petition and appeal in 2013 and 2014.

**Count 2:** First Amendment access to courts claim against Warhasuen for withholding mail and untimely mailing Walker's legal documents in May, July, and August 2013.

**Count 3:** First Amendment access to courts claim against Bramlet, Knust, Ellis, and Smolak for denying Walker access to the law library to research in 2013.

**Count 4:** First Amendment access to courts claim against Bramlet and Knust for not providing Walker legal materials and adequate access to law library in January 2014.

**Count 5:** First Amendment access to courts claim against McCarthy, John Doe 3, John Doe 4, Jones, Hanks, Berry, Best, and Clendenin for causing Walker to miss a court deadline in 2015 (previously Count 9).

**Count 6:** First Amendment access to courts claim against John Doe 7 and Clendenin for denying Walker access to the law library and legal exchange in January 2016 (previously Count 10).

**Count 7:** First Amendment access to courts claim against John Doe 5 for denying Walker's requests for legal exchange in June 2016 (previously Count 11).

**Count 8:** First Amendment claim against Porter, John Doe 2, and Butler for moving Walker to a smaller cell with unsanitary living conditions in December 2014 in retaliation for filing grievances and lawsuits (previously Count 12).

| | |
|---|---|
| **Count 9:** | Eighth Amendment claim for cruel and unusual punishment against Porter and John Doe 2 for placing Walker in a shower for hours without a working restroom on December 4, 2014. |
| **Count 10:** | First Amendment claim of retaliation claim against Smith, Brookman, and Willis regarding the issuance of a false disciplinary ticket and excessive punishment in 2015. |
| **Count 11:** | Fourteenth Amendment claim against Smith, Brookman, and Willis regarding the issuance of a false disciplinary ticket and excessive punishment in 2015. |
| **Count 12:** | First Amendment claim against Nurse Jane Doe 1 for not referring Walker for examination by a doctor and denying him medical treatment in retaliation for not signing the co-pay voucher on May 2015. |
| **Count 13:** | First Amendment claim of against Butler for refusing to provide Walker adequate soap in retaliation for Walker complaining about his lack of soap in front of a visitor from the John Howard Association in 2015. |
| **Count 14:** | Eighth Amendment claim for cruel and unusual punishment against Butler for denying Walker soap for several weeks in 2015. |
| **Count 15:** | First Amendment claim of retaliation against Clendenin for denying Walker's request for the administrative directive rules and index for attorney calls in February 2016 (previously Count 14). |
| **Count 16:** | First Amendment claim against Pierce, Allsup, Wood, Butler, Rowald, Qualls, Spiller, Warhasuen, Bramlet, Clendenin, John Doe 6, John Doe 8, John Doe 9, John Doe 10, John Doe 11, John Doe 12, John Doe 13, John Doe 14, John Doe 15, John Doe 16, and John Doe 17 for retaliating against Walker by mishandling his grievances and making it difficult for him to use the administrative remedies process. |

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Third Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[4] pleading standard.**

---

[4] *See Bell Atlantic Crop. v. Twombly*, 550 U.S. 544, 570 (2007).

**SEVERANCE**

Unrelated claims against different defendants belong in separate lawsuits. *George,* 507 F.3d at 607 (citing 28 U.S.C. § 1915(b)). And, the Seventh Circuit has warned district courts not to allow inmates "to flout the rules for joining claims and defendants, *see* FED. R. CIV. P. 18, 20, or to circumvent the Prison Litigation Reform Act's fee requirements by combining multiple lawsuits into a single complaint." *Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017).

Rule 20 of the Federal Rules of Civil Procedure prohibits a plaintiff from asserting unrelated claims against different defendants or sets of defendants in the same lawsuit. Under Rule 20, multiple defendants may not be joined in a single action unless the plaintiff asserts at least one claim to relief against each respondent that arises out of the same transaction or occurrence or series of transactions or occurrences and presents a question of law or fact common to all. *George*, 507 F.3d at 607 (emphasis added); 3A MOORE'S FEDERAL PRACTICE § 20.06, at 2036–45 (2d ed. 1978). Thus, to join defendants under Rule 20, at least one claim against the first defendant must be transactionally related to at least one claim against the second defendant and so on. If this requirement is not met, the defendants were improperly joined and the actions must be severed.

Rule 18 allows a party to join unrelated claims against defendants in a lawsuit. However, this Rule applies only after the requirements for joinder of parties have been satisfied under Rule 20. *Intercon Research Assn., Ltd. v. Dresser Indus., In*c., 696 F.2d 53, 57 (7th Cir. 1983). Because Rules 18 and 20 can sometimes permit the joinder of unrelated claims, courts have broad power under Rule 21 to sever even properly-joined claims. *See UWM Student Assoc. v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018); *Vermillion v. Levenhagen*, 604 F. App'x. 508, 513 (7th Cir. 2015).

Now that Walker has added factual allegations, claims, and over twenty new defendants, the Court finds that all of his claims can no longer proceed together in the same case. *See H-D U.S.A. v. P'ship & Unincorp. Assoc. Identified on Schedule "A,"* No. 21-cv-01041, 2021 WL

780486, at * 1 n. 1 (N.D. Ill. Mar. 1, 2021) (noting that it is appropriate for "federal courts to raise improper joinder on their won, especially when the sheer number of defendants waves a joinder red flag and ups the chances that the plaintiff should be paying separate filing fees for separate cases." (quoting *Estee Lauder Cosmetics Ltd. v. P'ship & Unincorp. Assoc*. 334 F.R.D 182, 186 (N.D. Ill. 2020))). Walker's claims span three years and involve distinct groups of defendants, separate transactions or occurrences, few common questions of fact, and different legal theories. Thus, his claims will be severed.

Defendants named in Counts 1-7 are properly joined, and Walker will be allowed to continue prosecuting those claims in this lawsuit. Walker seeks relief from Defendants Bramlet, Knust, Warhasuen, Ellis, Smolak, McCarthy, John Doe 3, John Doe 4, John Doe 5, John Doe 7, Jones, Hanks, Berry, Best, and Clendenin for conduct which allegedly resulted in repeated denial of access to courts while incarcerated at Menard. Although the incidents span from 2013 through 2016, the Court finds that there is a logical relationship between the operative facts alleged against these Defendants to support permissive joinder.

Furthermore, Walker may join Count 15 and proceed with his retaliation claim against Clendenin. Although the retaliation claim against Clendenin is transactionally unrelated, Rule 18 allows for the joinder of unrelated claims against defendants in a lawsuit.

The remaining claims will be severed from this case. Counts 8 and 9 are against Porter, John Doe 2, and Butler regarding the moving of Walker to a temporary shower cell and then to segregation on December 4, 2014; Counts 10 and 11 are against Smith, Brookman, and Willis for constitutional violations regarding the issuance of a false disciplinary ticket and excessive punishment in 2015; Count 12 is against Nurse Jane Doe 1 regarding retaliatory conduct at a medical appointment; Counts 13 and 14 are against Butler for denying Walker soap for several weeks in 2015; and Count 16 is against twenty-one defendants for the mishandling Walker's

grievance in retaliation for lodging institutional and legal complaints against Menard staff. While Walker attempts to link all these claims together by claiming that Defendants consistently acted in retaliation, the claims involve distinct groups of defendants with very little overlap. To allow Walker to continue with these unrelated claims in this case would run afoul of the Seventh Circuits admonition that "[a] litigant cannot throw all of his grievances, against dozens of different parties, into one stewpot." *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012). Therefore, the Court will exercise its discretion and sever Counts 8 and 9, Counts 10 and 11, Count 12, Counts 13 and 14, and Count 16 into five separate suits. Counts 1-7 and Count 15 will remain in this action, and the merits of these claims will be reviewed in this Order.

## MERIT REVIEW COUNTS 1-7 & COUNT 15

### *Access to Courts: Counts 1 - 7*

Count 1 will proceed against Bramlet, Knust, and Warhasuen for the reasons stated in the previous Merit Review Order (Doc. 21, p. 7).

Count 2 will proceed against Warhasuen, who Walker claims in May 2013 withheld his legal mail and in July 2013 returned to Walker a motion for leave to appeal unsent, preventing him from filing a timely appeal. Count 2 will not proceed against Warhasuen to the extent that Walker claims Warhasuen returned a civil complaint back to Walker unmailed in August of 2013. Walker alleges that the civil case in the Chancery Court of Cook County was ultimately dismissed because he did not have paper, pens, or envelopes to file a timely response. Walker has not alleged a connection between Warhasuen's conduct and the dismissal of this civil case. *See Lewis v. Casey*, 518 U.S. 343, 351 (1996).

Count 3 will proceed against Bramlet, Knust, Ellis, and Smolak for denying Walker library access, preventing him from preparing response motions and resulting in the dismissal of a defendant from one of his cases in November 2013.

Count 4 will proceed against Bramlet and Knust for failing to provide Walker legal materials and access to the library, resulting in a defendant being dismissed from his FOIA case in January 2014.

Count 5 will proceed against McCarthy, John Doe 3, John Doe 4, Jones, Hanks, Berry, Best, and Clendenin for conduct that allegedly caused Walker to miss a court deadline in March 2015.

Count 6 will proceed against John Doe 7 and Clendenin for denying Walker law library access in January 2016, resulting in the inability to appeal a court order and a motion being denied.

Count 7 will not proceed against John Doe 5. Walker repleads this claim, which was previously dismissed, stating that he needed documents from his legal property to assist "his attorney with a claim in the civil complaint." Ultimately, a claim was not included in the civil complaint drafted by his attorney because Walker "was not able to retrieve the supporting documents before his attorney filed the motion." As Walker had an attorney at the time, and a claim was left out of a complaint at the attorney's discretion, the Court finds these allegations insufficient to plead that he was hindered from pursuing a non-frivolous claim based on the intentional conduct of John Doe 5. Therefore, Count 7 is dismissed.

### *Retaliation: Count 15*

For the reasons stated in the previous Merit Review Order, Count 15 will proceed against Clendenin for denying Walker access to certain library resources in February 2016 in retaliation for filing grievances. (*See* Doc. 21, p. 9).

### IDENTIFICATION OF UNKNOWN DEFENDANTS

Walker will be allowed to proceed with Count 5 against John Does 3 and 4 and Count 6 against John Doe 7. But these defendants must first be identified with particularity before service of the Third Amended Complaint can be made on them. Defendant Anthony Wills, the Warden of

Menard Correctional Center, will remain a defendant in this action in his official capacity only for the purpose of identifying the John Does.

Walker shall have until **October 6, 202**1, to file a Notice with the Court, and provide to Defendant Wills any information he possesses which will help identify the John Doe Defendants, such as: physical descriptions, gender, rank, partial names/nicknames, specific job assignments, shift times, and locations and dates where Walker interacted with the John Does.

Defendant Wills shall have until **October 20, 2021,** to file a Notice with the Court, and provide to Walker, the identity of the John Does. Or, if Defendants are unable to identify the John Does, Wills shall provide to Walker any document or information which may assist in the identification of the John Does.

Walker shall have until **November 3, 2021**, to file a motion to substitute specific Defendants for the John Does or, if the John Does remain unidentified, to file a motion specifying additional steps that can be taken to identify the John Does. **Failure to file a motion to substitute by this date will result in the dismissal of the John Does without prejudice.**

### PENDING MOTIONS

The motion to inform, make clear and excuse (Doc. 84) filed by Walker is **GRANTED**. The Court notes that Walker alleges on page 34 of the Third Amended Complaint that John Doe 17 did not provide him a copy of grievance #85-1-13 until August 2013 in retaliation.

The request for status and to know (Doc. 98) filed by Walker is **DENIED as moot** in light of this Order.

### DISPOSITION

For the reasons stated above, pursuant to Rule 15, the Court **GRANTS** the Motion for Leave to File an Amended Complaint. (Doc. 76). The motion to inform, make clear and excuse is **GRANTED,** and the request for status and to know is **DENIED as moot**. (Docs. 84, 98). The

Clerk of Court is **DIRECTED** to file the proposed amended complaint and attached exhibits submitted to the Court on September 17, 2020, as the "Third Amended Complaint."

After review of the Third Amended Complaint, pursuant to Section 1915A, it is **ORDERED** that **Counts 8-14** and **Count 16** are **SEVERED** into five new cases as follows:

| | |
|---|---|
| **First Severed Case:** | Counts 8 and 9 against Porter, John Doe 2, and Butler. |
| **Second Severed Case:** | Counts 10 and 11 against Smith, Brookman, and J. Willis. |
| **Third Severed Case:** | Count 12 against Nurse Jane Doe 1. |
| **Fourth Severed Case:** | Counts 13 and 14 against Butler. |
| **Fifth Severed Case:** | Count 16 against Pierce, Allsup, Wood, Butler, Rowald, Qualls, Spiller, Warhasuen, Bramlet, Clendenin, John Doe 6, John Doe 8, John Doe 9, John Doe 10, John Doe 11, John Doe 12, John Doe 13, John Doe 14, John Doe 15, John Doe 16, and John Doe 17. |

In the new case, the Clerk is **DIRECTED** to file the following documents:

- The Third Amended Complaint; and
- This Memorandum and Order.

It is further **ORDERED** that <u>**the only claims remaining in this action are Counts 1-7 and Count 15 against Bramlet, Knust, Warhasuen, Ellis, Smolak, McCarthy, John Doe 3, John Doe 4, Jones, Hanks, Berry, Best, Clendenin, John Doe 7, and John Doe 5.**</u> The Clerk of Court is **DIRECTED** to **TERMINATE** Butler and Porter as defendants in this action. **Warden Anthony Wills** will remain a defendant in his official capacity only for the purpose of responding to discovery requests aimed at identifying the unknown defendants. The Clerk of Court is **DIRECTED** to correct his name in the docket. (*See* Doc. 81).

It is further **ORDERED** that **Count 1** will proceed against Bramlet, Knust, and Warhasuen, **Count 2** will proceed *in part* against Warhasuen, **Count 3** will proceed against Bramlet, Knust, Ellis, and Smolak, **Count 4** will proceed against Bramlet and Knust, **Count 5** will proceed against

McCarthy, John Doe 3, John Doe 4, Jones, Hanks, Berry, Best, and Clendenin, **Count 6** will proceed against John Doe 7 and Clendenin, and **Count 15** will proceed against Clendenin. **Count 7 is DISMISSED without prejudice.** Because there are no remaining claims against John Doe 5, he is **DISMISSED without prejudice,** and the Clerk shall **TERMINATE** John Doe 5 as a defendant.

The Clerk **SHALL** serve **Smolak** in accordance with the Court's previous Merit Review Order. (Doc. 21).

With the exception of Defendant Warden Anthony Wills, all Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Third Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this merit review order and the previous Merit Review Order of the Complaint (Doc. 21).** Defendants are **ADVISED** that the Court does not accept piecemeal answers. The deadlines for late appearing parties to make initial disclosures and file a motion for summary judgment on the issue of exhaustion is provided in the Initial Scheduling and Discovery Order.

Finally, Walker shall have until **November 3, 2021**, to file a motion to substitute specific Defendants for the John Does or, if the John Does remain unidentified, to file a motion specifying additional steps that can be taken to identify the John Does. **Failure to file a motion to substitute by this date will result in the dismissal of the John Does without prejudice.**

IT IS SO ORDERED.

DATED:   September 22, 2021

                                             _s/Stephen McGlynn_
                                             **STEPHEN P. MCGLYNN**
                                             **United States District Judge**