# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

**JAMES E. WALKER, #R02343,**

    **Plaintiff,**

v.

**KIMBERLY BUTLER, et al.,**

    **Defendants.**

Case No. 19-CV-00445-SPM

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

In September 2021, Plaintiff James Walker filed his Third Amended Complaint ("Complaint"). (Doc. 103). Walker alleged that while incarcerated at Menard Correctional Center ("Menard"), Defendants violated his First Amendment rights by hindering his ability to file a habeas petition and denying him access to the law library and legal materials to research. Defendants moved for summary judgment on Walker's complaint. (Doc. 172). Walker filed a response (Doc. 178), to which Defendants filed a reply. (Doc. 180).

### PROCEDURAL HISTORY

As this Court and others have recited, this case has a complicated history. *See Walker v. Thompson*, No. 21-cv-001173-SPM, Doc. 17 (S.D. Ill. Sept. 23, 2021); *Walker v. Butler*, No. 21-cv-1174-DWD, Doc. 15 (S.D. Ill. Mar. 28, 2022). This case commenced with Plaintiff James Walker originally filing a lawsuit in this district on July 16, 2015. *See Walker v. Unknown*, No. 15-cv-786-MAB (S.D. Ill.). In that case, the Court found that Walker's first three complaints violated Federal Rule of Civil Procedure 20's

joinder requirements. *Unknown*, Doc. 7, 11, 17. Finally, counsel was recruited to represent Walker, and on February 26, 2016, recruited counsel filed an amended complaint. Walker's counsel in Case No. 15-cv-786-MAB also submitted three more proposed complaints on February 26, 2016 via email to the presiding Judge, which were to be severed into separate lawsuits. *Unknown*, Doc. 33. However, those proposed complaints were overlooked at the time and not severed or filed of record. It was not until April 23, 2019, that the Court severed the three proposed complaints into new actions. *Unknown*, Doc. 126. One of those severed cases was designated as this case, *Walker v. Butler*, No. 19-cv-00445-SPM.

On July 18, 2019, the Court dismissed the original Complaint for failure to state a claim and granted Walker leave to amend. (Doc. 9). Walker then filed two amended complaints, and, assuming that Walker wanted to proceed with the latest version, the Court conducted a preliminary review of the Second Amended Complaint on October 2, 2019. (Docs. 16, 21, 22). On September 17, 2020, Walker sought leave to file his Third Amended Complaint. (Docs. 76, 77, 103). Leave was granted, and the Court conducted a merits review. (Doc. 102).

On December 7, 2021, Defendants filed a motion to dismiss. (Doc. 125). The Court granted the motion in part, leaving Count 1 against Defendants Bramlet and Knust, Count 3 against Defendants Bramlet, Knust, and Ellis, and Count 4 against Defendants Bramlet and Knust to proceed. (Doc. 140). Defendants moved for summary judgment on Walker's complaint. (Doc. 172). Walker filed a response (Doc. 178), to which Defendants filed a reply. (Doc. 180).

**FACTUAL BACKGROUND**

In March 2013, Defendants Bramlet and Knust, in their roles as law library paralegals at Menard, did not provide Plaintiff with a clear copy of his habeas corpus petition and exhibits while the facility was on lockdown. (Doc. 103, p. 19.) Also in March 2013, Defendants Bramlet and Knust did not inform Plaintiff (i) that his petition for a writ of habeas corpus could be electronically filed; (ii) that he should include an affidavit affirming his placement of the petition in the prison mail system if he wanted to take advantage of the prison mailbox rule; and (iii) how to answer a show-cause order demonstrating why his petition should not be dismissed as untimely. (*Id.*) Defendants Bramlet and Knust did not notify Plaintiff that his habeas petition had been dismissed in August 2014, allegedly preventing him from filing a timely appeal. (*Id.*)

Plaintiff alleges that he went to the law library on or about August 16, 2013 to obtain copies, and while in the law library needed to use the restroom. (Doc. 173-2, p. 12, 31-32). Plaintiff was returned to his cell house by a corrections officer in order to use the restroom. (*Id.*, p. 13.) Plaintiff testified in his deposition that Defendant Ellis was not involved in returning Plaintiff to his cell or back to the law library. (*Id.*) Plaintiff further testified that he probably did receive the copies that he had requested before being escorted back to the cell house. (*Id.*, p. 32-33.)

The case for which Plaintiff was preparing on or about August 16, 2013 was continued by the court until November 25, 2013. (Doc. 103, p. 20; Doc. 173-2, p. 11.). Plaintiff's Complaint alleges that he did not receive another call pass to the law library from Defendants Bramlet or Knust, and that Defendants Bramlet and Knust did not permit Plaintiff to use the law library again until November 25, 2013, the day of his

court deadline. (Doc. 103, p. 20.) Plaintiff alleges that this resulted in a defendant being dismissed from that case. (*Id.*). In his deposition, Plaintiff testified that he was not allowed to go to the law library on November 25, 2013. (Doc. 173-2, p. 8.) Records of law library call passes granted to Plaintiff at Menard in 2013 reflect that he was issued call passes ten times after August 16, 2013: on September 16, 23, and 30; October 7, 21, and 28; November 25; December 2, 23, and 30. (Doc. 173-1, ¶ 5).

In January 2014, Defendants Bramlet and Knust did not provide Plaintiff with pens, paper, or an envelope to enable him to write and mail a response to the court while Menard was on lockdown, nor did they provide him with adequate access to the law library to properly research a motion to dismiss and draft a response with supporting legal authority. (Doc. 103, p. 21.). During his deposition, Plaintiff testified that he received the monthly allocation of "10 sheets of paper…3 pens and some envelopes" as long as he was indigent. (Doc. 173-2, p. 26-27). Plaintiff was also denied access to the law library in January 2014. Records of law library call passes granted to Plaintiff at Menard in 2014 reflect that he was issued call passes twice in January 2014, one of which was cancelled due to issues at Menard. (Doc. 173-1, ¶ 5). If a library call pass was cancelled due to issues within the facility, access to law library services, such as copies of case law and pleadings, notarization, and e-filing, was provided via institutional mail and/or in-person law library staff tours of the cell houses. (*Id.*).

## LEGAL STANDARD

Summary judgment is the moment in a lawsuit where a party lays its proverbial cards on the table, showing what evidence it possesses to convince a trier of fact to agree with its version of the events. *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007)

(quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)). Summary judgment is only appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (*quoting* FED. R. CIV. P. 56(a)). That "burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

In determining the existence of a genuine dispute of material fact, the Court construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Spath v. Hayes Wheels Intern.-Indiana, Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). While the Court must view the evidence and draw all reasonable inferences in favor of the opposing party, "[i]nferences and opinions must be grounded on more than flights of fancy, speculations, hunches, intuitions, or rumors[.]" *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *Rand v. CF Industries, Inc.*, 42 F.3d 1139, 1146 (7th Cir. 1994); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323. Furthermore, when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Henning v. O'Leary*,

477 F.3d 492, 496 (7th Cir. 2007).

## ANALYSIS

### I.     Exhaustion of Administrative Remedies

Defendants argue they are entitled to summary judgment on the basis that Walker failed to exhaust his administrative remedies. However, Defendants moved to withdraw their defense of failure to exhaust administrative remedies (Doc. 70), which was granted by this Court on September 21, 2020. (*See* Doc. 77). Defendants seek to reassert the failure to exhaust defense in a memorandum of law in support of a motion for summary judgment. While defendants first attempted to reassert this defense in their amended answers (Doc. 126, Doc. 143), they failed to move for the Court to grant them leave to reassert the defense in said answers. Defendants "make no effort to set forth any good cause or excusable neglect to allow for consideration of the issue." *Kruger v. Baldwin*, No. 19-CV-268-RJD, 2023 WL 130422, at *4 (S.D. Ill. Jan. 9, 2023).

Moreover, parties cannot amend their pleadings through arguments raised in motions for summary judgment or briefs opposing summary judgment.  See *Anderson v. Donahoe*, 669 F.3d 989, 997 (7th Cir. 2012). An affirmative defense must be raised in the answer, not by motion. *See Vasquez v. Indiana Univ. Health, Inc.*, 40 F.4th 582, 588 (7th Cir. 2022). As discussed above, Defendants should have moved for leave to reassert the withdrawn defense, rather than simply reassert it in an amended answer and in a brief supporting a motion for summary judgment. Accordingly, the Defendants may not reassert this defense at the summary judgment stage. The motion for summary judgment on this ground is denied.

### II.    Statute of Limitations

Defendants also move for summary judgment on the grounds that the statute of limitations has run as to four of the allegations in Count 1 and all the allegations in Count 4. Section 1983 does not contain an express statute of limitations, so federal courts adopt the forum state's statute of limitations for personal injury claims. *Ashafa v. City of Chicago*, 146 F.3d 459, 461 (7th Cir. 1998). In Illinois, the limitations period for § 1983 cases is two years. *Kalimara v. Illinois Dep't of Corrections*, 879 F.2d 276, 277 (7th Cir. 1989) (citing 735 ILCS 5/13-202). However, a federal court relying on the Illinois statute of limitations in a § 1983 case must toll the two-year limitations period while a prisoner exhausts the administrative grievance process, as required under the Prison Litigation Reform Act (PLRA). *Johnson v. Rivera*, 272 F.3d 519 (7th Cir. 2001). This merely requires that the plaintiff pursue administrative remedies, not that he exhaust them. *See Dobbey v. Uptown People's L. Ctr.*, No. 23-1885, 2023 WL 8106978, at *2 (7th Cir. Nov. 22, 2023). The tolling ends when the grievance is denied. *See Bowers v. Dart*, 1 F.4th 513, 518 (7th Cir. 2021).

Defendants contend that Walker failed to file grievances pertaining to all the allegations in Counts 1 and 4, and for the denial of library call passes in Count 3. (Doc. 173, p. 8). Plaintiff contends that he filed several grievances covering the above allegations. (Doc. 178, p. 13-20). A review of the evidence demonstrates that Defendants are correct. The record shows that Walker filed three grievances. The first was filed on September 12, 2013, in which he alleged the setup of the law library at Menard prevented him from conducting legal research and that he was denied access to the bathroom while doing his research. (*Id.*, p. 87-88). The second was filed on October 7, 2014, in which Walker similarly alleges he was prevented from using the

bathroom. (*Id.*, p. 57-58). The third was filed on November 4, 2013, and alleges the same. (*Id.*, p. 78-79). Accordingly, Defendants are correct that Walker's grievances pertain only to the allegations in Count 3 that he was prevented from using the bathroom while conducting legal research. Thus, only those allegations were effectively tolled under the statute of limitations, which the Defendants do not contest.

As to Count 1, the four allegations from March 2013 would be barred by the statute of limitations as of March 2015. These claims were included in Plaintiff's initial complaint, which was filed on February 26, 2016, nearly a year after the statute of limitations expired, rendering each of these March 2013 claims time barred. Walker's final allegation occurred in August 2014, within the two-year statute of limitations. Thus, only Walker's fifth allegation of Count 1 is not time-barred. As to Count 4, all allegations occurred in January 2014. As these claims must have been brought by February 2016, they are time-barred by the statute of limitations. Thus, only the final allegation of Count 1 and all the allegations of Count 3 are not time-barred. Defendants are entitled to summary judgment on statute of limitations grounds for the first four allegations in Count 1 and the entirety of Count 4.

### III.  First Amendment: Denial of Access to Courts

Though the Court has granted summary judgment on statute of limitations grounds for the majority of Count 1 and all of Count 4, it will conduct review of the merits of all of Walker's claims. In the context of an alleged First Amendment violation, "persons in prison, like other individuals, have the right to petition the government for redress of grievances." *Cruz v. Beto*, 405 U.S. 319, 321 (1972). The Supreme Court has held that prisoners have the right to petition for redress of

grievances, which includes access to the courts for purposes of presenting their complaints. *Ex parte Hull*, 312 U.S. 546 (1941); *White v. Ragen*, 324 U.S. 760 (1945). Specifically, prisoners must be given reasonable access to a law library or to persons trained in the law. *Younger v. Gilmore*, 404 U.S. 15 (1971); *Bounds v. Smith*, 430 U.S. 817 (1977). Establishing a right of access to law materials, however, requires an individualized demonstration of an inmate having been hindered in efforts to pursue a legal claim. *See Lewis v. Casey*, 518 U.S. 343 (1996). Mere delay or inconvenience is not an unconstitutional detriment; on the contrary, the plaintiff must show that the defendants took steps imposing a meaningful impediment to his underlying claims. *Jones v. Van Lanen*, 27 F.4th 1280, 1288 (7th Cir. 2022). Specifically, a plaintiff must connect the defendants' conduct with his "inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions." *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009).

### A. Count 1

Plaintiff makes three allegations against Defendants Bramlet and Knust in Count 1. The first is that they did not provide him with a clear copy of his habeas corpus petition and exhibits while Menard was on lockdown. The Court determines that Bramlet and Knust did not hinder Walker's ability to file a habeas petition at all, let alone meaningfully. Walker does not connect the defendants' conduct to his alleged injury: he does not explain how the failure of Bramlet and Knust to present him with a clear copy of his petition led to its eventual denial, and "[s]peculative prejudice is not enough for an 'actual injury'". *Hertel v. Miller-Lewis*, 695 F. App'x 957, 961 (7th Cir. 2017) (quoting *Rossi v. City of Chi.*, 790 F.3d 729, 736 (7th Cir. 2015)). At most,

Walker alleges that this led "to an unnecessary back and forth and the court repeatedly receiving Plaintiff petition incomplete." (Doc. 178, p. 21). He does not allege that this failure led to the denial of his petition, merely that it caused him to inconveniently have to resubmit his petition. Furthermore, in similar scenarios, the Seventh Circuit has held that an inmate's right to access the courts is not violated when prison officials fail to provide him with his requested records, "[b]ecause he did not need his records to start his lawsuit[.]" *Jackson v. Lemmon*, 737 Fed. Appx. 795, 797 (7th Cir. 2018).

The second allegation is that Bramlet and Knust did not provide him with timely notification regarding the dismissal of his habeas petition. However, Walker himself testified that his failure to file a timely appeal was due to the number of lockdowns at Menard, not due to any inadequacies with the legal assistance at Menard. (Doc. 173-2, p. 8). As to these two allegations, the Court rules that as a matter of law, Bramlet and Knust's actions did not meaningfully impede Walker's access to the courts.

Third, he alleges that Defendants Bramlet and Knust did not give him various pieces of legal advice, specifically: (i) to e-file his petition, (ii) to include an affidavit so that he could rely on the prison mailbox rule, and (iii) how to respond to a show-cause order. (Doc. 103, p. 19). However, the First Amendment does not entitle individuals in custody to free legal advice. In rejecting the notion that the Constitution requires the state to enable prisoners to litigate effectively once in court, the Court in *Lewis* noted that, "[to] demand the conferral of such sophisticated legal capabilities upon a mostly uneducated and indeed largely illiterate prison population is effectively to demand

permanent provision of counsel, which we do not believe the Constitution requires." 518 U.S. at 354. Accordingly, Walker cannot allege that a failure to provide legal advice constitutes a deprivation of access to the courts, as this would be akin to requiring state prison officials to help prisoners effectively litigate their cases. Therefore, Bramlet and Knust did not meaningfully impede Walker's access to courts by refusing to offer him legal advice.

Even if these allegations did meaningfully impede Walker's access to courts, pursuant to *Lewis*, a delay in receiving legal materials or legal assistance is not actionable if the delay is the "product of prison regulations reasonably related to legitimate penological interests." 518 U.S. at 362. In circumstances similar to the instant case, the plaintiffs in *Lewis* had protested the fact that there were delays in accessing the law library when the prison was on lockdown. *Id*. But the Supreme Court held that such delays were not of a constitutional significance, particularly due to the fact that the institution in question housed "the most dangerous and violent prisoners in the Arizona prison system." *Id*. Menard also houses inmates that present "special disciplinary and security concerns," and Walker has not presented any evidence that the lockdowns were not reasonably related to legitimate penological interests. *See Butler v. Bramlet*, No. 314CV00537JPGPMF, 2016 WL 11464687, at *5 (S.D. Ill. May 2, 2016).

### B. Count 3

In Count 3, Walker alleges that, after leaving the law library in August 2013 to use the restroom in his cell house, he was denied the ability to return to the law library until November 25, 2013. (Doc. 103, p. 20.) Specifically, Defendants Bramlet and

Knust allegedly denied the call passes needed for Plaintiff to be able to return to the law library between August and late November, and Defendant Ellis allegedly forced Plaintiff to leave the law library when he needed to use the restroom. (Doc. 173-2, p. 12). In the second half of 2013, the law library restroom was undergoing renovation. (Doc. 173-1, ¶ 4).

First, examining the facts, Walker's claim that he was subsequently denied call passes to the law library is contradicted by both the records from Menard and his own testimony. Walker was granted six additional call passes to the law library before the month of November, and a seventh during the month of November, and admitted during his deposition that he did go to the law library in September, October, and November. (Doc. 173-1, ¶ 5). Moreover, when call passes to the law library were issued to individuals in custody during this renovation, they were clearly imprinted with a notice that the restroom in the law library was not accessible, and that individuals in custody should use the facilities before leaving their cell house. (*Id.*, ¶ 4). Walker was therefore informed, in advance of arriving at the law library, that he would not be able to use the restroom during his visit and his decision to leave the law library to use the restroom in his cell house was, therefore, his alone. (*Id.*). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Henning v. O'Leary*, 477 F.3d 492, 496 (7th Cir. 2007). As Walker's claim is blatantly contradicted by the record, this Court adopts Defendants' version of the facts. Walker does not demonstrate how being given seven visits to the law library

over a three-month period impeded his ability file a legal claim, and accordingly, Defendants are entitled to a judgment as a matter of law for these allegations.

However, even if the Court were to adopt Walker's version of the facts, his claim would still fail on two legal grounds. First, Walker does not allege how this regulation at Menard impeded his ability to file his claims. Second, even if he had, prisoners may routinely experience delays resulting from prison regulations in receiving legal materials or legal assistance, as long as those regulations are reasonably related to legitimate penological interests, even where they result in actual injury. *Lewis,* 518 U.S. at 362. Here, Menard's restroom regulation was directly related to the renovation of the prison, which is more than enough to satisfy the threshold of reasonable relation. Accordingly, even had Walker suffered prejudice, Defendants are entitled to summary judgment as to Count 3.

### C. Count 4

Finally, in January 2014, Bramlet and Knust allegedly did not provide Walker with pens, paper, or an envelope to enable him to write and mail a response to the court while Menard was on lockdown, nor did they provide him with adequate access to the law library to properly research a motion to dismiss and draft a response with supporting legal authority. (Doc. 103, p. 21.) Walker alleges that this led to dismissal of his FOIA case. (*Id.*)

First, Walker alleges that the materials provided to him to write and mail a response was insufficient. "It is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents with notarial services to authenticate them, and with stamps to mail them. *Owens v. Evans*, 878 F.3d 559, 564

(7th Cir. 2017) (quoting *Bounds v. Smith*, 430 U.S. 817, 824-25, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977)). However, it is up to prison officials to determine the manner in which they provide meaningful access. *See Bounds*, 430 U.S. at 825. In order to facilitate their legal needs, individuals in custody at Menard who are deemed to be indigent are provided with an "indigent package" consisting of one pen, paper, and two envelopes during each month that they qualify as indigent. (Doc. 178-1, ¶ 6). During his deposition, Walker testified that he received the monthly allocation of "10 sheets of paper…3 pens and some envelopes" as long as he was indigent. (Doc. 178-2, p. 26-27.). Walker does not identify "any specific negative consequences" of receiving only the indigent package entitled to him. *Owens*, 878 F.3d at 565. In other words, he fails to demonstrate how the allocation granted to him meaningfully interfered with his ability to pursue a legal claim. Thus, based on the undisputed facts, Defendants are entitled to summary judgment.

However, even if this Court were to adopt Walker's view or treat the facts as disputed, Defendants would still be entitled to summary judgment. The injury that Plaintiff claims arose from these alleged denials was the dismissal of a defendant from a FOIA case. (Doc. 103, p. 21.) As set forth in *Lewis*, the Constitution does not guarantee inmates access in order to file any and every form of lawsuit they may wish to file. 518 U.S. at 355. Rather, it guarantees the right to challenge sentences and conditions of confinement, neither of which take the form of a FOIA case. *See Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006).

Second, Walker alleges that he was denied access to the law library in January of 2014. However, this allegation is contradicted by the record. As reflected in the

records of library call passes from Menard, Walker was granted two call passes to the law library in January 2014, one of which was cancelled due to issues at Menard. (Doc. 173-1, ¶ 5). Plaintiff attended the law library on at least one occasion during the month of January 2014, and law library services would have been available to him for any time that a call pass was cancelled due to issues at the facility. (*Id*.).

Regardless of whether Walker was denied writing and mailing materials or law library visits in January 2014, he has not stated an injury that is recognized as the basis of an access-to-courts claim, and thus Defendants are entitled to summary judgment.

### IV. Qualified Immunity

Defendants also argue that they are entitled to qualified immunity, but because the Court grants summary judgment on the merits it need not address the qualified immunity arguments.

#### CONCLUSION

For the reasons stated above, the Court **GRANTS** the Motion for Summary Judgment filed by Defendants Bramlet, Knust, and Ellis. (Doc. 172). Accordingly, this case is **DISMISSED WITH PREJUDICE**. The Court **DIRECTS** the Clerk of Court to enter judgment in favor of Defendants and against Plaintiff Walker and to close the case.

**IT IS SO ORDERED.**

DATED:  December 12, 2024

s/ *Stephen P. McGlynn*
STEPHEN P. McGLYNN
U.S. District Judge
